UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JASON MATTHEW FUNK,**

      **Petitioner,**

**v.**                            **Case No. 8:24-cv-1518-MSS-NHA**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

# O R D E R

Funk files a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court convictions. (Doc. 1) The Respondent moves to dismiss the petition as an unauthorized second or successive petition (Doc. 6), and Funk files a reply. (Doc. 8)

An indictment charged Funk with first-degree murder (Count One), attempted sexual battery (Count Two), robbery (Count Three), burglary of a conveyance (Count Four), cannabis manufacturing (Count Five), and tampering with physical evidence (Count Six). (Doc. 7-2 at 11–15) Because the prosecutor agreed to waive the death penalty (Doc. 7-2 at 420), Funk pleaded guilty to the crimes charged in the indictment. (Doc. 7-2 at 17–19)

At the plea hearing, the prosecutor summarized evidence that demonstrated a factual basis for the plea. (Doc. 2-1 at 16–27) Funk murdered an insurance adjuster, who visited Funk's home, by inflicting severe blunt trauma to her head with a muffler. (Doc. 2-1 at 18) The adjuster's blood was splattered inside Funk's home and on Funk's shoes, and police officers found her body without pants and underwear in the Hillsborough River behind Funk's home. (Doc. 2-1 at 18–21, 26) Pieces of charred carpet removed from inside the home were

in a burn pit in the backyard. (Doc. 2-1 at 18–20) Funk's fingerprint appeared on an envelope in the adjuster's car. (Doc. 2-1 at 22) Funk purchased items at a nearby store with the adjuster's credit card. (Doc. 2-1 at 23–24) Nineteen marijuana plants were in a closet in the home. (Doc. 2-1 at 26)

On March 23, 2005, the trial judge sentenced Funk to life in prison for the murder conviction (Count One), a concurrent life sentence for the robbery conviction (Count Three), a concurrent fifteen years for the attempted sexual battery conviction (Count Two), and a concurrent five years for all remaining convictions. (Doc. 7-2 at 21–32) Funk did not appeal.

In 2012 and 2016, Funk unsuccessfully moved for post-conviction relief in state court. (Doc. 7-2 at 4–5) In 2021, Judge Charlene Honeywell dismissed as time-barred an earlier Section 2254 petition attacking the state court judgment. *Funk v. Sec'y, Dep't Corrs.*, No. 8:17-cv-2864-CEH-JSS (M.D. Fla.), ECF. No. 21. The court of appeals denied Funk a certificate of appealability. Order, *Funk v. Sec'y, Dep't Corrs.*, No. 21-10693-F (11th Cir. July 22, 2021).

On December 8, 2021, the post-conviction court granted in part Funk's motion to correct his sentence as follows (Doc. 7-2 at 345–46) (state court record citations omitted):

> In his motion, Defendant only raises issues with Counts One and Three. In the May 24, 2021, order, the Court denied the claims pertaining to Count One. With regard to Count Three, Defendant claims his sentence is illegal because it exceeds the statutory maximum. Specifically, Defendant claims his life sentence for robbery with a weapon exceeds the maximum term of thirty years' imprisonment. Defendant argues that there is a difference between the maximum sentence for robbery with a deadly weapon and robbery with a weapon. Defendant claims that while a conviction for "robbery with a deadly weapon" under Section 812.13(2)(a), Florida Statutes, is "punishable by imprisonment for a term of years not exceeding life," he was charged with "robbery with a weapon" under Section 812.13(2)(b), which is "punishable by imprisonment not exceeding [t]hirty years." Ultimately, Defendant requests the

> Court vacate his conviction and sentence and resentence him on Count Three.
>
> In its response, the State concedes that "Count Three of the indictment failed to allege the necessary element that the weapon was deadly." The State also concedes that "[D]efendant pled to a first-degree felony on Count Three and cannot be sentenced to more than thirty years in prison on that count." The State requests the Court to correct Defendant's sentence on Count Three.
>
> In the instant case, with regard to Count Three, the Court finds that Defendant was convicted of robbery with a weapon under Section 812.13(2)(b), Florida Statutes (2005), a first-degree felony. For his robbery with a weapon conviction, Defendant could have been sentenced up to thirty years' prison or, when specifically provided by statute, up to life in prison. *See* § 775.082(3)(b), Fla. Stat. (2005). Because Defendant was sentenced to life in prison on Count Three, the Court finds Defendant's sentence on Count Three is illegal.
>
> Accordingly, the Court finds Defendant's request to correct an illegal sentence must be granted to the extent it is only on Count Three and Defendant is entitled to relief in the form of a resentencing in Case Number 04-CF-21948.

The life sentence for the murder conviction remained undisturbed as did the sentences on all the other Counts except the robbery Count.

At the resentencing hearing on the robbery conviction, the trial judge sentenced Funk to thirty years in prison and entered the amended judgment *nunc pro tunc* to March 23, 2005, the date the original judgment was entered. (Doc. 2-1 at 65) The title of the amended judgment is "Judgment Resentence as to Count Three, *Nunc Pro Tunc* to March 23, 2005" (Doc. 7-2 at 428), and the trial judge amended the sentence as follows (Doc. 7-2 at 429): "Amended Sentence — Court set aside sentence imposed on Count Three, *nunc pro tunc* to March 23, 2005[;] Counts One, Two, Four, Five, [and] Six to remain as imposed."

In his second federal petition, Funk asserts the following two grounds for relief (Doc. 1 at 3–4):

> Whether Petitioner's successful challenge to an illegal sentence imposed pursuant to counsel's misadvice during the critical plea negotiation stage resulting in Petitioner's sentence being reduced from a life sentence to thirty years, should be considered: (a) newly discovered evidence, (b) denial of his Sixth Amendment right to counsel, and (c) therefore making his waiver of trial involuntary and acceptance of his plea agreement unknowing, involuntary, and not freely made?
>
> . . .
>
> The belated discovery that Petitioner's sentence was illegal, which the State conceded and the Court agreed that the life sentence imposed according to the plea agreement, negotiated by counsel, exceeded the statutory maximum of thirty years, in which Petitioner was re-sentenced to thirty years.
>
> (Doc. 1 at 3) (Ground One)
>
> Whether [Judge Pomponio's] refusal to find a factual basis for the altered plea agreement at Petitioner's resentencing was bias, [and] therefore, Petitioner should have been allowed to withdraw his original plea agreement and proceed to trial?
>
> . . .
>
> Judge Pomponio's statements at Petitioner's resentencing — "[T]hat's why I said I don't need a factual basis. I know there is a factual basis in this case, and it's something that will stay with me also[.]" — substantiates Petitioner's claim that no factual basis was stated, for the record, for Petitioner's altered plea to be accepted by the Court, at Petitioner's resentencing, because of Judge Pomponio's personal feelings and bias.
>
> (Doc. 1 at 4) (Ground Two)

The Respondent asserts that Funk's second petition is an unauthorized second or successive petition because Judge Honeywell adjudicated Funk's first petition on the merits. (Doc. 6 at 5) The Respondent further asserts that the amended judgment is not a new

4

judgment that Funk may challenge in the second petition because the trial judge entered the amended judgment *nunc pro tunc* to the date when the original judgment entered. (Doc. 6 at 5–8) Funk replies that the amended judgment is a new judgment that he may challenge in a second petition. (Doc. 8 at 1–3)

Because Judge Honeywell adjudicated Funk's earlier petition on the merits by dismissing the petition as time-barred, Section 2244(b) requires Funk to obtain permission from the court of appeals before filing a second or successive petition challenging the same judgment. 28 U.S.C. § 2244(b)(3)(A). *Patterson v. Sec'y, Fla. Dep't Corrs.*, 849 F.3d 1321, 1325 (11th Cir. 2017) ("When his first federal petition was dismissed as untimely, Patterson lost his one chance to obtain federal habeas review of his 1998 judgment.").

However, "'where . . . there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not second or successive[.]'" *Osbourne v. Sec'y, Fla. Dep't Corrs.*, 968 F.3d 1261, 1264 (11th Cir. 2020) (quoting *Magwood v. Patterson*, 561 U.S. 320, 341–42 (2010)). "[N]ot every action that alters a sentence necessarily constitutes a new judgment for purposes of Section 2244." *Osbourne*, 968 F.3d at 1265. "'[T]he judgment that matters for purposes of Section 2244 is the judgment authorizing the petitioner's confinement.'" *Osbourne*, 968 F.3d at 1265 (quoting *Patterson*, 849 F.3d at 1325).

*Osbourne*, 968 F.3d at 1266–67, held that the petitioner's amended judgment, imposed *nunc pro tunc* to the date of the original judgment, related back to the original judgment and therefore was not a "new judgment" under Section 2244. *Osbourne*, 968 F.3d at 1266 n.4, refused to review whether the state court properly imposed the amended sentence, *nunc pro tunc* to the date of the original judgment:

We note Florida law also provides that "when the court wholly omits an order or wishes to change it, the new order cannot be entered *nunc pro tunc*." *Riha's Estate*, 369 So. 2d at 404. However, Osbourne did not challenge the imposition of the amended sentence *nunc pro tunc* in state court, despite having the opportunity to do so. Further, he does not raise any challenge to the *nunc pro tunc* designation now. Under these circumstances and because the propriety of labeling a Florida judgment "*nunc pro tunc*" is a matter of state law, we do not opine as to whether the imposition of the amended sentence in his case was the proper or correct use of a *nunc pro tunc* designation under Florida law. That is a matter best left to the province of the state court. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("Because 'it would be unseemly in our dual system of government for a federal . . . court to upset a state court conviction without an opportunity to the state courts to correct [an alleged] violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)). Our decision here is limited to the effect of the *nunc pro tunc* designation under Florida law and what effect that designation has on whether the judgment is a new judgment for purposes of Section 2244(b).

*Cassidy v. Sec'y, Fla. Dep't Corrs.*, 119 F.4th 1336, 1340–41 (11th Cir. 2024), reaffirmed

that a state court judge's imposition of an amended judgment, *nunc pro tunc* to the date of the

original judgment, receives deference in federal court:

When a state court issues an amended judgment or sentence *nunc pro tunc*, our precedent requires us to accept that designation and refrain from evaluating whether it was proper under state law. *See Osbourne*, 968 F.3d at 1266–67, 1266 n.4. In *Osbourne*, we held that an amended sentence that a state court issued *nunc pro tunc* did not constitute a new judgment because it related back to the date of the original judgment. *Id.* at 1266–67. We did so without evaluating the validity of the *nunc pro tunc* designation under Florida law because that matter was "best left to the province of the state court." *Id.* at 1266 n.4.

Although *Osbourne* requires us to defer to a state court's designation of an amended judgment or sentence as *nunc pro tunc*, *id.* at 1266–67, 1266 n.4, the state court must have, in fact,

> classified the order as *nunc pro tunc* for this deference to apply,
> see *id.* at 1266 (explaining that the date of the original judgment
> controlled "[i]n light of the trial court's *nunc pro tunc* designation
> when issuing Osbourne's amended sentence" (emphasis added))
> . . . .

Because the trial judge imposed the amended judgment in Funk's case *nunc pro tunc* to the date of the original judgment (Docs. 2-1 at 65 and 7-2 at 428–29), the amended judgment is not a new judgment that Funk may challenge in a second petition. *Cassidy*, 119 F.4th at 1341 ("We stated that 'the *determining factor* as to whether the state court judgment is a new judgment for purposes of Section 2244(b) turns on the *nunc pro tunc* designation.' Because the *nunc pro tunc* designation on Batson's amended sentences came from the state court, we must give it the dispositive weight that *Osbourne* did.") (citation omitted and italics in original).

Even if the amended judgment is not a new judgment, the Court may still review Funk's claim if the claim did not ripen until after the denial of the earlier petition. *Stewart v. United States*, 646 F.3d 856, 863 (11th Cir. 2011) ("'[C]laims based on a *factual* predicate not previously discoverable are successive,' but '[i]f . . . the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.'") (italics in original) (quoting *Leal Garcia v. Quarterman*, 573 F.3d 214, 221, 222 (5th Cir. 2009)).

**Ground One**

Funk asserts that trial counsel deficiently performed by misadvising him that the statutory maximum sentence for robbery was life in prison. (Doc. 1 at 3) He contends that, because of trial counsel's alleged misadvice, he unknowingly and involuntarily pleaded guilty to robbery. (Doc. 1 at 3) He contends that he first discovered that the life sentence for robbery was illegal when the post-conviction court granted relief. (Docs. 1 at 3 and 2 at 8–10) Even if

Funk first discovered that the life sentence for robbery was illegal when the post-conviction court granted relief, the claim is successive. *Stewart*, 646 F.3d at 863 ("[C]laims based on a *factual* predicate not previously discoverable are successive[.]") (italics in original).

The claim did not ripen when Funk discovered that the life sentence for robbery was illegal. The claim ripened when trial counsel deficiently performed, and Funk's judgment and sentence became final. Fla. R. Crim. P. 3.850(b). Before he filed his first petition, Funk could have discovered that the indictment charged him with robbery with a weapon (Doc. 7-2 at 13), that Section 812.13(2)(b), Florida Statutes, defines robbery with a weapon as a first-degree felony punishable by thirty years, and that trial counsel deficiently performed by failing to advise him that the statutory maximum sentence for robbery with a weapon was thirty years in prison. Consequently, the claim in Ground One does not "fall[ ] within . . . a small subset of unavailable claims that must not be categorized as successive." *Stewart*, 646 F.3d at 863. *Holland v. Sec'y, Fla. Dep't Corrs.*, 941 F.3d 1285, 1287 (11th Cir. 2019) ("Holland has already filed two habeas petitions in federal court. The first of those petitions was denied on the merits. That means any later petition — containing claims, like the ones here, that could have been raised when Holland filed his initial Section 2254 petition — that Holland filed is considered 'successive' and must meet the requirements set out in 28 U.S.C. § 2244(b).").

**Ground Two**

Funk asserts that the trial judge violated his federal rights at the resentencing hearing by failing to determine whether a factual basis supported the robbery conviction and by demonstrating personal bias and prejudice. (Docs. 1 at 4 and 2 at 15–22) Because the resentencing hearing occurred after Judge Honeywell dismissed Funk's earlier petition, the

claim in Ground Two ripened after the dismissal of the petition. Consequently, the claim is not successive. *Stewart*, 646 F.3d at 863 ("We are not faced with a claim based on facts that were merely undiscoverable. Rather, Stewart has presented a claim, the basis for which did not exist before the vacatur of his predicate state convictions — after his first Section 2255 motion had already been filed and dismissed.").

However, even if the claim is not successive, the claim is procedurally barred. Funk appealed the amended judgment (Doc. 7-2 at 432), but did not argue on appeal that the trial judge violated his rights by failing to determine whether a factual basis supported the conviction and by demonstrating personal bias and prejudice. (Doc. 7-2 at 442–56) Because Funk did not fairly present the claim by invoking one complete round of the state's established appellate review process, Funk failed to exhaust his remedies in state court. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —— the applicant has exhausted the remedies available in the courts of the State."). *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[W]e conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

If Funk returned to state court to exhaust his remedies, the post-conviction court would dismiss the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Consequently, the claim is procedurally defaulted in federal court. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in

state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

Even if Funk could excuse the procedural default, the claim is meritless. The indictment charged Funk with robbery with a weapon by alleging that he "rob[bed], st[ole], and t[ook] away from [the adjuster] certain property, to wit: an ATM or bank card, the value of said property being less than three hundred dollars . . . and in the course of said robbery, [ ] carried a weapon, to wit: a motorcycle muffler and tailpipe." (Doc. 7-2 at 13)

At the plea hearing, the prosecutor summarized evidence that demonstrated a factual basis for the robbery conviction (Doc. 2-1 at 17–18, 23–25):

> [Prosecutor:]     The circumstantial evidence will establish beyond a reasonable doubt that [the adjuster] was struck repeatedly about the head with a blunt impact object. The medical examiner, having viewed a muffler pipe that was seized from within the home during the execution of the search warrant, has been able to determine based upon the patterned injuries to the head that that was in all likelihood probably the murder weapon.
>
> [The adjuster] died as a result of severe blunt impact to her head. The medical examiner has indicated that at least — and these are his terms — three vicious blows were struck to her head.
>
> . . .
>
> The evidence would also include the fact that [the adjuster] owned a G.T.E. credit card, G.T.E. Federal Credit Union credit card, that that credit card was used at a convenient store on the later afternoon

hours of that same Friday, the date of [the adjuster's] death.

That was used to purchase a variety of items of groceries from that convenient store, that the convenient store clerk, although he was not able to identify the defendant from a photopak, nonetheless required — received from the person who negotiated that transaction an identification card from a company with the name Jason Funk on it and he wrote down the name of the company World Com., Inc., on the receipt for that transaction and the name Jason Funk with the — the number of that identification card.

During the execution of the search warrant, that same identification card was found in the master bedroom entertainment center, the same identification card used to negotiate the purchase with the victim's credit card only a few hours after her disappearance.

The evidence would indicate that after a prolonged interview with Mr. Funk on the evening of Saturday the 13th of November, and going into the early morning hours of Sunday, November 15th, Mr. Funk, who at the time had not been advised of any law enforcement suspicion that a muffler pipe was used, was placed into a — a room with his girlfriend, Pamela Hence.

This is a monitored room from which the officers, detectives were able to monitor Mr. Funk and Ms. Hence both visually and audibly and that at that time, they overheard Mr. Funk indicating to Ms. Hence, they think — I paraphrase — they think I battered her about the head with a bat or a motorcycle pipe or something along those lines.

> At that point, law enforcement had no such suspicion of the use and they did direct their attention and did recover the muffler pipe that I alluded to earlier and took that to the medical examiner's office.

This summary of the evidence demonstrated a factual basis for the robbery conviction. *See* § 812.13(1), Fla. Stat. ("'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.").

The post-conviction court determined that the sentence for the robbery conviction exceeded the statutory maximum, vacated the sentence, and granted a resentencing hearing. (Doc. 7-2 at 345–47) Because the post-conviction court did not vacate the conviction, the trial judge did not need to determine at the resentencing hearing that a factual basis supported Funk's plea.

Even so, at the resentencing hearing, the trial judge, who presided over the earlier plea hearing, determined that a factual basis supported the plea (Doc. 7-2 at 423–24):

| | |
|---|---|
| [Prosecutor:] | Yes, Your Honor. And I know that you were the presiding judge. I was prepared to do a factual basis for the new judge, but if you're — if you want to rely on your memory, it's completely up to you. I can go over the facts again. |
| [Judge:] | I will never forget the facts of this case. |
| [Prosecutor:] | Okay. Yes, ma'am. |
| [Judge:] | I can probably recite them. |
| [Prosecutor:] | Okay. |
| [Judge:] | The factual basis as well as you could. |

| | |
|---|---|
| [Prosecutor:] | Yes, Your Honor. |
| [Judge:] | So, I'm going to find that there is a factual basis. It was unfortunately, [ ] my understanding that it was a [first-degree felony punishable by a life sentence], and I sentenced him to life in prison concurrent to Count One. And the State conceding, and I agree with the State conceding, that on Count Three only is what we're here for. |
| [Trial counsel:] | Correct. |
| [Judge:] | That is [ ] — is there anything — first of all, Mr. Funk, is there anything you would like to say to the Court? |
| [Funk:] | Your Honor, it's been seventeen years, the last time I stood in your courtroom, and I'll never forget your reaction when you left the courtroom because you left out the courtroom in tears. And it was at that moment I realized just a glimpse of the iceberg of wreckage that I created from my crime and there is nothing I can do to change that, Your Honor. I'm just grateful for the opportunity to be in front of your courtroom again. |
| [Judge:] | Well, I didn't know that you caught that. |
| [Funk:] | Oh, yes. |
| [Judge:] | But you were — you're correct in your assessment and that was my leaving the courtroom was me holding it together as long as I could, honestly, and that's why I said I don't need a factual basis. I know there is a factual basis in this case, and it's something that will stay with me also. |

The record refutes Funk's contention that the trial judge failed to determine that a factual basis supported the plea.

Also, Section 38.10, Florida Statutes, and Rule 2.330, Florida Rules of Judicial Administration, govern the disqualification of a trial judge for bias and prejudice. Because disqualification of a trial judge is based on state law and because a federal court may grant relief on habeas "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States," the claim is not cognizable on federal habeas. 28 U.S.C. § 2254(a). *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief. . . . This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (citations omitted).

Also, Funk contends that the trial judge demonstrated personal bias and prejudice by admitting at the resentencing hearing that she had cried at the first sentencing hearing. (Doc. 2 at 15) "'The standard for viewing the legal sufficiency of a motion to disqualify is whether the facts alleged, which must be assumed to be true, would cause the movant to have a well-founded fear that he or she will not receive a fair trial at the hands of that judge.'" *Wall v. State*, 238 So. 3d 127, 143 (Fla. 2018) (citation omitted). "'[T]his fear of judicial bias must be objectively reasonable.'" *Wall*, 238 So. 3d at 143 (citation omitted). "[T]he context of the hearing and history of the case as reflected in the record are relevant to understanding whether a movant has a well-founded fear of judicial bias." *Wall*, 238 So. 3d at 143.

Funk contends that the trial judge's refusal to determine whether a factual basis supported the robbery conviction demonstrated the trial judge's bias and prejudice against him. (Docs. 1 at 4 and 2 at 15–17) However, as explained above, at both the plea hearing and the resentencing hearing, the trial judge determined that a factual basis supported Funk's plea.

Because the post-conviction court vacated Funk's sentence and did not vacate the robbery conviction, the trial judge did not need to determine at the resentencing hearing that a factual basis supported the plea.

Funk contends that the trial judge's refusal to permit Funk to withdraw his plea at the resentencing hearing demonstrated the trial judge's bias and prejudice against him. (Docs. 1 at 4 and 2 at 15–17) However, at the resentencing hearing, the prosecutor correctly advised the trial judge that the appropriate remedy was to impose a sentence within the statutory maximum sentence because the prosecutor did not consent to the withdrawal of the negotiated plea. (Doc. 7-2 at 420–21) *Sedell v. State*, 224 So. 3d 885, 886–87 (Fla. 2d DCA 2017), explains:

> Sedell had entered into a negotiated plea agreement and sought relief from an illegal sentence via Rule 3.800(a) when the time to file a motion under Rule 3.850 had expired. *See* 223 So. 3d at 381. . . . [A] defendant is entitled to relief on a Rule 3.800(a) motion when an illegal sentence results from a negotiated plea. *See Armstrong*, 145 So. 3d at 952; *McDuffie*, 946 So. 2d at 100; *Lang*, 931 So. 2d at 922. In that situation, the postconviction court should resentence the defendant within the statutory maximum if the State agrees to the resentencing; if the State does not agree, then the court must allow the defendant to withdraw his plea. *See Parks*, 223 So. 3d at 382–83; *Armstrong*, 145 So. 3d at 952; *McDuffie*, 946 So. 2d at 100; *Lang*, 931 So. 2d at 922.

The original judgment entered on March 23, 2005 (Doc. 7-2 at 21–32), Funk did not appeal, and the time to appeal expired thirty days later — April 22, 2005. The time to file a Rule 3.850 motion expired two years later — April 23, 2007. Fla. R. Crim. P. 3.850(b). *DePasquale v. State*, 257 So. 3d 505, 506 (Fla. 4th DCA 2018) ("Because DePasquale did not file a direct appeal, the judgment and sentence became final in December 2014, after the time for filing a notice of appeal expired. DePasquale timely filed his Rule 3.850 motion less than two years later, on November 1, 2016.") (citations omitted). On March 29, 2021, Funk placed

the Rule 3.800(a) motion in the hands of prison officials for mailing. (Doc. 7-2 at 287–98)
Consequently, when Funk filed the Rule 3.800(a) motion challenging the sentence for
robbery, the time to file a Rule 3.850 motion had expired.

At the end of the resentencing hearing, after the trial judge pronounced the amended
sentence, Funk told the trial judge that he wanted to renegotiate the plea agreement with the
prosecutor (Doc. 7-2 at 425):

| | |
|---|---|
| [Funk:] | Your Honor, if I may? |
| [Judge:] | Yes, sir. |
| [Funk:] | It's very difficult as a defendant to accept that sentence because what you're giving me totally disturbs the agreement of the plea. I should be entitled to have the opportunity to negotiate a new plea. |
| [Trial counsel:] | And on behalf of Mr. Funk, I did attempt to negotiate a different plea as to both — well, candidly, Count Three with the State, I think [there] was no movement as to talking about Count One or Count Three. |
| [Prosecutor:] | That is correct, Judge. We negotiated for a life sentence and that is what we intend to always pursue. |
| [Judge:] | Okay. All right. Your comments are noted, sir. |
| [Funk:] | Thank you, Your Honor. |

Because the trial judge could not permit Funk to withdraw his plea, without the prosecutor's
consent, the record refutes Funk's contention that the trial judge refused to permit him to
withdraw his plea. *Sedell*, 224 So. 3d at 886–87.

Lastly, the resentencing hearing occurred seventeen years after the sentencing hearing
when the trial judge cried. At the resentencing hearing, Funk submitted documents that

demonstrated that he had participated in programs while in prison and requested that the trial judge impose a sentence of twenty-five years in prison, instead of the statutory maximum sentence of thirty years. (Doc. 7-2 at 421–22) However, trial counsel acknowledged that Funk would continue to serve his concurrent mandatory life sentence for the murder conviction. (Doc. 7-2 at 422) Because of the significant lapse of time between the sentencing hearing and the resentencing hearing and the undisturbed mandatory life sentence, Funk failed to allege facts that demonstrated that he had a well-founded and objectively reasonable fear that he would not receive a fair sentencing before the trial judge. *Wall*, 238 So. 3d at 143. Also, because of the aggravating circumstances of Funk's crimes, Funk could not demonstrate that any alleged error substantially and injuriously affected his sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Accordingly, the Court **GRANTS** in part and **DENIES** in part the Respondent's motion to dismiss the petition as an unauthorized second or successive petition. (Doc. 8) Ground One is **DISMISSED** for lack of jurisdiction. Ground Two is **DENIED** as meritless. For Ground Two, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. Because the Court lacks jurisdiction to review Ground One, the Court cannot issue a certificate of appealability for that ground. *Williams v. Chatman*, 510 F.3d 1290, 1295 (11th Cir. 2007). The Clerk is **DIRECTED** to enter a judgment against Funk only on Ground Two and to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on March 7, 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE